### EX PARTE JOE DAY.

No. 16916. Delivered October 10, 1934.
Rehearing Denied December 12, 1934.
Reported in 76 S. W. (2d) 1060.

The opinion states the case.

*Polk Shelton* and *Henry H. Brooks,* both of Austin, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

*Nelson Phillips* and *C. C. English,* both of Dallas, and *R. L. Batts,* of Austin, amici curiae.

LATTIMORE, JUDGE.—Complaint was filed in a justice court of Travis County charging that appellant exhibited a machine and instrument, viz: a coin operated handkerchief vending machine intended and designed for use by the general public and for the purpose of vending handkerchiefs, and being a machine for which an occupation tax is required to be paid,— said machine being commonly known as a five cent machine, requiring and being operated by depositing therein a five cent coin as a fee for each operation and for each handkerchief sold by said machine; said appellant not having annexed or attached to said machine a tax receipt for the current year of 1934, in violation of House Bill 174 passed at the First Called Session of the 43rd Legislature. This complaint was filed April 13, 1934. Warrant for the arrest of appellant issued the same day, as did an application for habeas corpus, hearing on which was set for April 18th. On this last named day it appears that an agreed state of facts was signed and filed in the district court, and thereupon appellant was remanded to the custody of the constable, from which order and judgment he prosecutes this appeal.

Appellant's complaint is of the unconstitutionality of the act, based on an attempted exemption of pay toilets and drinking cup vending machines, which appellant says makes the act obnoxious to section 2, art. 8 of our Constitution, providing that all occupation taxes shall be equal and uniform upon the same class of subjects within the limits of the authority levying the tax; also he complains on the same ground because of the fact that the tax laid on marble machines in the act is greater than and measured by a different standard than on "Other exactly similar amusement machines." Section 1 of the act is here quoted in full:

"That there is herby levied an Annual Occupation Tax upon, and which shall be collected from and paid by, every owner, manager, or exhibitor of every coin operated phonograph, electrical piano, electrical batter, graphophone, weighing machine, target pistol, miniature golf machine, miniature football machine, miniature baseball machine, miniature race track stero-

scopic machine, gum machine, candy machine, cigarette machine, handkerchief machine, sandwich machine, or any other class or kind of machine, whether enumerated or not, where a fee is charged, which is used for the purpose of amusement, entertainment or for vending commodities, merchandise, confections, or service of any kind and which is operated by coins or metal slugs or tokens similar to coins, where such fee is in excess of five cents (5), an annual occupation tax of Ten Dollars ($10.00) on each machine; where such fee is five cents (5), an annual occupation Tax of Five Dollars ($5.00), on each machine; and where such fee is one cent (1), an Annual Occupation Tax of One Dollar ($1.00) for each machine; provided that from every owner, manager, or exhibitor of every coin operated marble machine, marble table machine, marble shooting table, or marble machine of any description, whether enumerated or not, where a fee is charged, whether used for the purpose of amusement, entertainment, or for vending commodities, merchandise, confections, or services of any kind, and which is operated by coin or metal slugs or token similar to coins or metal slugs where such fee is one cent (1) or more, an Annual Occupation Tax of Ten Dollars ($10.00) for each machine; provided that the provisions of this subdivision shall not apply to pay telephones, gas meters, pay toilets and/or sanitary drinking cup vending machines which are operated with coins. It shall be unlawful to operate, show or exhibit any of the machines or instruments covered by this subdivision without having annexed or attached thereto where same is plainly visible, the tax receipt covering such machine or instrument for the current year for which same is operated, shown or exhibited; provided that all funds derived from the occupation tax on such marble machines shall be placed to the credit of the State Available School Fund."

Ananlyzing this statute, we note therein a clause which says: "Provided that the provisions of this *subdivision* shall not apply to pay telephones, gas meters, pay toilets and/or sanitary drinking cup vending machines which are operated with coins." We have examined said section 1, and indeed all other parts of the act, with most scrupulous care in order to see if there be found any "subdivision" thereof to which such language could be applicable, and have found none.

The State insists that said word "Subdivision" has reference to that part of the act immediately preceding said exemption clause, which part of the act so claimed to be referred to appears set off by two semicolons, and which contains the legis-

lative announcement of the tax to be levied on all sorts of marble machines, and the State insists that the language of the act and of the proviso just quoted, evidences the intent of the legislature to exempt pay telephones, etc., only from the tax levy upon and rules made applicable to marble machines. We have much respect for the views of our State's attorney,—and for us to agree with him and so hold might shorten this opinion, —but careful search for authority justifying us in so holding has brought no result. To be sure when a whole is divided, there is division; and when any such division is further divided, there is subdivision; but the mere statement of the existence of one subdivision necessarily states the existence of one or more other subdivisions, and we have found no authority justifying the courts in agreeing with the State in this regard, and permitting or allowing the courts to select any particular part of the act which may be set off merely by punctuation, and arbitrarily holding it to be the part of the act referred to as a subdivision.

In framing a law as part of the structure of government, it manifestly will not do to insert punctuation here and there in a long statute,—whether commas, colons, semicolons or periods,—and then insert a proviso as is here done, merely stating "Provided that the provisions of this subdivision," etc., etc., and hold this to be sufficient without further identification of that part referred to as a subdivision. If such rule be laid down by any court of last resort, then indeed would confusion be worse confounded, for all parties comprehended could with equal standing and force insist that the words "This subdivision" should be given application to that part of the act thus set off by punctuation whose such construction would be to them most favorable. The reasoning above indulged is backed up in the case before us by the further fact that as far as we can see there is not one thing laid down in the clause of the act relating to marble machines which could under any circumstances be held to refer to or applicable to pay telephones, etc., making necessary the conclusion that there could be no need for the clause exempting such machines from such provisions. Nor do we think the use of the word "This" in the clause attempting exemption of pay telephones, etc., helps the State in said contention. The same expression appears later in the act wherein it is said "It shall be unlawful to operate, show or exhibit any of the machines or instruments covered by *this subdivision*" without having a tax receipt for the current year attached. No one could

claim that the words "This subdivision" so used could have reference only to marble machines.

Considering appellant's first contention regarding this law in connection with that of the State, and further examining said act, we note that the caption thereof states, among other things, as follows: "An Act levying an Annual Occupation Tax upon all machines * * * operated by coins, * * *; exempting pay telephones, gas meters, pay toilets and sanitary drinking cup vending machines from the provisions OF THIS ACT." Section 35, art. 3 of our Constitution provides that the subject of all legislative bills, except general appropriation bills, shall be expressed in the title, and if there be other subjects embraced in any bill not so expressed,—as to them the act shall be void. It has been held that the effect of this language is to make the caption a part of the bill, and that if any parts of the act lie outside the caption, same may be rejected without holding the entire act unconstitutional, when the law is so framed as that this may be done without destroying the whole law, and in case there be words used in a statute making same obscure or doubtful, the caption may in such case be looked to in determining the construction to be given to such obscure or doubtful word or expression. Beard v. Rowan, 9 Pet., 301; Mayor of Baltimore v. Moore, 6 Har. & J., 375; Edwards v. Pope, 4 Ill., 465; Garrigus v. Board, etc., 39 Ind., 66.

The clause of this act attempting to state the exemption of pay telephones, etc., as appears from inspection thereof, exempted the named machines,—if they be machines,—from the provisions of this SUBDIVISION, whereas the caption of the act sets out as part of its purpose, to exempt from the provisions of THE ACT pay telephones, etc. In line with what we have before said, we conclude from consideration of the whole act, including the caption, that we should construe the words "This subdivision," in each place where they occur in said act, as meaning and intending "This act."

Is the act to be held unconstitutional because the legislature expressly exempts from its operation pay toilets and sanitary drinking cup vending machines? We state the question thus because of the fact that in Ex parte Walker, 52 S. W. (2d) 266, we held the exemption of pay telephones and gas meters not sufficient ground for holding a similar act unconstitutional.

This court recognizes that primarily it must be left to that branch of government whose right and duty it is to levy taxes, —to determine upon what property or occupation same may or should be levied, and as has been before said, only when stat-

utes are imposed which base their levy on unjust and unfair classifications or principles, or are such as to operate with gross inequality,—will the courts interpose and arrest the course of such legislation by declaring same void. Cooley on Taxation, 126, 127; Com. v. Banks, 5 Allen, 428; Mr. Cooley in his work on Constitutional Limitations, 598, says that: "The power to impose taxes is one so unlimited in force and so searching in extent, that the courts scarcely venture to declare that it is the subject of any restrictions whatever, except such as rest in the discretion of the authority which exercises it." In McCulloch v. Maryland, 4 Wheat., 430, Chief Justice Marshall said that it was unfit for the judicial department to inquire what degree of taxation is the legitimate use, and what degree the abuse of the power of the Legislature. That the courts have nothing to do with the policy, wisdom, expediency, or propriety of legislative enactments, is almost a maxim. Ollre v. State, 57 Texas Crim. Rep., 534. It is equally true that the necessity for particular legislation is to be judged by the legislature, and that their acts in such regard are final, unless in plain, clear and unequivocal terms that action is contrary to constitutional limitations. See Cooley on Constitutional Limitations, pp. 598; 673-6; Cooley on Taxation, pp. 1-4; 384; 512; Dwarris on Const., pp. 444-467.

Our Constitution expressly authorizes the levy of occupation taxes, and the constitutionality of a statute is presumed unless and until the contrary is made evident, and if possible the courts must give statutes such construction as will not make them contravene the Constitution. Ex parte Mabry, 5 Texas App., 98. The courts should not hold a law unconstitutional unless same is clearly in conflict with some provision of same. Davey v. Galveston County, 45 Texas, 299.

It is plain that this court must indulge the presumption that pay toilets and sanitary drinking cup vending machines do not belong in the class of subjects such as are taxed in this act, or else that they have characteristics such as justified the conclusion of the legislature that they could be exempted,—unless the contrary is shown in the record before us. We observe that no trial was had in the court below. No witness gave testimony upon the extent of which, the knowledge of the witnesses, their apparent truth or falsity, might depend the exact similitude of marble tables and machines which vend music, gum, mints, etc., with pay toilets and sanitary drinking cup vending machines. With the utmost respect to those who drew and signed an agreement that there is such exact similarity, this court is compelled

to hold that it will not embark on the uncharted and dangerous practice of holding solemn acts of the legislature unconstitutional upon no other showing of the facts involved than results from such agreement. Article 340, Rev. Civ. Stats., 1925, reads as follows: "No admissions made by the district or county attorney in any suit or action in which the State is a party shall operate to prejudice the rights of the State."

Whether a pay toilet,—whose character and operation is affected by considerations of public necessity, health and convenience,—should be classed with marble machines and tables, which vend only amusement apparently of the same class as would result from a roulette wheel, or any other game of chance forbidden by our Penal Code,—seems to us to be a matter as fully within the knowledge and judgment of the members of the legislature as of the gentlemen who entered into the agreement which we find on file in this record. Equally so as to the similitude between the machines taxed and a sanitary drinking cup vending machine. For substantially the same reasons we conclude that appellant's second contention, viz: that marble machines must be taxed as are those machines whose operation vends some commodity of use to the public, and that same are therefore in the same class of subjects,—can not be sustained by us from the record before us. So concluding, we hold the judgment remanding appellant to be correct, and the judgment will be affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

MORROW, Presiding Judge.—In his motion for rehearing appellant insists that we did not properly dispose of his contentions, and failed to pass on the propositions on which he relied. We have again carefully gone over the entire record in the light of the motion, and observe that appellant appears here as the operator of a handkerchief vending machine, for operation of which a fee of five cents was charged,—he being held in custody upon a complaint charging him with so operating said machine without paying the occupation tax fixed by statute; and without having attached to said machine a tax receipt for the current year as required by law. As stated in our original opinion, appellant sued out his writ of habeas corpus attacking said law on the ground chiefly that it exempted operators of sanitary drinking cup machines from payment of said tax, he claiming that sanitary drinking cup vending machines, are in the same

class as handkerchief vending machines, and that such exemption makes the law unconstitutional.

That the Legislature may put in different classes, for taxing purposes, occupations or forms of business,—unless they be so nearly the same as that the attempted classification .is wholly without reason therefor,—seems announced in 17 R. C. L., p. 518, sec. 38, where it is also said that businesses of the same general class may be properly subdivided or reclassified where reason exists therefor. Particular attention is called to this because there are commodities and commodities; amusements and amusements; services and services, and if reason exists therefor the Legislature may subdivide or reclassify commodity vending machines, service vending machines and amusement vending machines. In Quong Wing v. Kirkendall, 223 U. S., 59, it is laid down that a State enactment may make discriminations, if founded on distinctions not unreasonable or purely arbitrary.

It is the general rule that all presumptions are in favor of the constitutionality of every law, and, as applicable to this case, it must be presumed that the conclusion of the Legislature that there existed reasonable ground for the classification made, must be upheld, unless and until the contrary is established. In this case the question then arises, was it purely arbitrary and unreasonable for the Legislature to put sanitary drinking cup vending machines in a different class for taxation purposes from the other commodity vending machines named, including a handkerchief vending machine? The presumption being that some distinction existed upon which the Legislature based its classification, we look to the record before us to see if such presumption be there overcome. Appellant insists that he has filed in lieu of a statement of facts herein a "Stipulation" signed by counsel for both appellant and the State and approved by the trial court, in which he insists that he has established the truth of his contention regarding an arbitrary and unreasonable distinction and classification.

In said Stipulation appellant has grouped all the machines, covered by the act referred to, into three classes: (1) Commodity venders; (2) Service venders; (3) Amusement venders. The character, kind, operation and use of each class is attempted to be covered by agreements or statements in separate paragraphs of said Stipulation. We quote the paragraph relating to commodity vending machines:

"It is agreed that the following machines mentioned in said Act are used and designed for use in vending commodities, viz: gum machines, candy machines, cigarette machines, handker-

chief machines, sandwich machines and sanitary drinking cup
—vending machines. Each of said machines is operated by the
use of a coin and when the coin is inserted in a slot in connec-
tion with said machine and a lever also in connection with
said machine, is used, the machines furnishes one of the
particular commodity which it is made to vend, to the pur-
chaser. As indicated by their respective names, gum machines
vend chewing gum, candy machines vend candy, cigarette ma-
chines vend cigarettes, handkerchief machines vend handker-
chiefs, sandwich machines vend sandwiches and sanitary drink-
ing cup machines vend sanitary drinking cups. There is no dis-
tinction between any of the various machines enumerated in this
paragraph of this stipulation on the basis of the income derived
therefrom, and it cannot be said that any one of said machines
produce more income for the owner, manager or exhibitor there-
of than any other of the machines enumerated in this para-
graph. The amount of income is dependent in each instance
on the favorable or unfavorable location of the machine and
not upon its mechanical construction, or the product vended.
There is no distinction between any of the machines mentioned
in this paragraph on the basis of the character of the occupa-
tion or the nature of the business, pursued by the owner, man-
ager or exhibitor thereof, or on the basis of the mechanical con-
struction and operation of the machine. An annual occupation
tax is levied, under the terms of the Act above referred to, upon
the owner, manager or exhibitor of all of the machines enum-
erated in this paragraph except sanitary drinking cups vending
machines. The owner, manager or exhibitor of a sanitary drink-
ing cup machine is wholly exempt from such annual occupation
tax although his occupation is identically the same as that pur-
sued by the owner, manager or exhibitor of any other machine
enumerated in this paragraph."

It will be noted that if effect be given to the agreements in
said stipulation, this court would have to hold that there existed
no distinction between any of said commodity vending machines,
or the right of the Legislature to tax their operation,—based
on the income, the character of the occupation, the nature of
the business resulting from such operation, or the mechanical
construction and operation of said machines. We would also
have to hold that the occupation of him who owned, operated
or exhibited a sanitary drinking cup machine is identically the
same as that of him who owns, operates and exhibits any of the
other enumerated machines, one of which is a handkerchief
vending machine such as appellant is here charged with oper-

ating. The above is almost the language of the last clause of the quoted part of said Stipulation, and in everything except the announcement of the resultant legal conclusion, same seems to us to concede and establish appellant's contention.

Appellant overlooks the evident fact that most of his agreements in said Stipulation state conclusions and not legal facts. To say, for instance, that "It cannot be said that any one of said machines produce more income for the owner * * * than any other of the machines enumerated in this paragraph," is but a fact conclusion necessarily arising or resulting, if true, from an actual comparison of the operation over a length of time of all those machines enumerated,—of which it is said in the Stipulation that "Thousands of each of the various kinds of machines enumerated * * * are in actual operation in Texas." No witness could testify in such language to any such conclusion in court save he had shown himself possessed of the actual knowledge resulting from proven connection with such machines,—a fact which would also have to be demonstrated,—before he could give such testimony. So also of the conclusion that the character of the occupation or nature of the business of the owner or operator of one kind of such machines,—is the same as that of the owner or operator of each and all other kinds of machines enumerated.

To state as a fact that a vender of candy, cigarettes, handkerchiefs and sandwiches is engaged in the same occupation or nature of business as the vender of sanitary drinking cups,— and that the comfort, health and convenience of the public are served in the same way and to the same degree and extent by each and all of said vending, and that the incomes are the same resulting from the operation of all such vending,—is to state conclusions which would not be tolerated as a statement of fact in any kind of court proceeding, and especially in any kind of criminal court proceeding. As said by our Supreme Court in Texas Co. v. Stephens, 103 S. W., 488:

"The difficulties in the way of sustaining the plaintiff's contention that this is not a permissible discrimination are twofold. In the first place it is not made to appear, and we do not know judicially, that there are in the State any of the other companies or persons transporting the other things mentioned who do not also transport oil. In other words, it is not shown that there is in fact any discrimination between plaintiff and others. In the second place, there is the question of classification, to which we have before alluded. The fact that all persons, etc., owning or controlling pipe lines are included in the first part of the

section and are taxed as a class does not, as plaintiff's counsel seem to argue, preclude further classification, and the application of differing rules among them. That is what is done, in effect, by the provision in question when it makes a special rule applicable only to those transporting oil, and the contention, if all the necessary facts were shown, would come back to the question as to whether or not such classification is based upon some real difference between the businesses or is arbitrary and capricious merely. We cannot say, as the cause is presented to us, that the business of piping oil partly for the public and partly for the owner of the line does not differ so substantially from the businesses of so transporting the other things as to furnish reason for the application of different rules to them."

Appellant insists in his motion that agreements as to facts in civil cases may be and have been made by the Attorney General of Texas, and he cites State v. Pioneer Oil & Refining Co., 292 S. W., 869. Very true, and we have in article 2177, Rev. Civ. Stats., 1925, direct authority for such action in civil cases, —but we have no such statute applicable in criminal cases, the general requirement there being, especially in felony cases, that the testimony must be heard in open court and given under oath. A man's liberty is at stake in criminal cases, and he may be incarcerated in jail or the penitentiary as a result of his trial for any criminal offense, if it be so decreed, or if he have not money with which to pay a pecuniary fine fixed as punishment. This court is unwilling to try out criminal issues dependent on facts without more showing as to such facts than here appears, or to solemnly determine the constitutionality of acts of the Legislature involving an exercise of their right to enact laws,—upon no greater showing than appears in this record. We see no reason or need for discussing the right and power of the Legislature to draw distinctions between drinking cup vending machines and the amusement vending machines or service vending machines referred to in other parts of the statute.

Being unable to agree with appellant's contentions, his motion for rehearing will be overruled.

*Overruled.*